Appeal Nos. 2014-1516, -1530

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

**SYNOPSYS, INC.,**

*Appellant,*

**v.**

**MENTOR GRAPHICS CORPORATION,**

*Appellee.*

**v.**

**MICHELLE K. LEE, DEPUTY DIRECTOR,
U.S. PATENT & TRADEMARK OFFICE,**

*Intervenor.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2012-00042.

# BRIEF FOR INTERVENOR – DIRECTOR OF
# THE UNITED STATES PATENT AND TRADEMARK OFFICE

NATHAN K. KELLEY
Solicitor

JAMIE L. SIMPSON
SCOTT C. WEIDENFELLER
Associate Solicitor

*Office of the Solicitor* – Mail Stop 8
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

*Attorneys for the Director of the
United States Patent and
Trademark Office*

February 25, 2015

# TABLE OF CONTENTS

**Page**

I.  STATEMENT OF JURISDICTION ................................................................1

II.  STATEMENT OF THE ISSUES ..................................................................1

III.  STATEMENT OF THE CASE .....................................................................4

    A.  Introduction ........................................................................................4

    B.  Statutory And Regulatory Background................................................4

        1.  Institution of an IPR proceeding................................................5

        2.  IPR trial and the final written decision .....................................7

        3.  Motion practice during IPR proceedings....................................7

    C.  Factual Background And Procedural History .......................................9

        1.  Mentor's '376 patent...................................................................9

        2.  2006 infringement litigation between Mentor and
            EVE.............................................................................................9

        3.  Synopsys's petition and subsequent acquisition of
            EVE   ..........................................................................................9

        4.  Mentor's preliminary response and the Board's
            institution decision ..................................................................10

        5.  Mentor's rehearing request and attempt to obtain
            additional discovery on Synopsys's relationship with
            EVE...........................................................................................10

        6.  Mentor's motion to amend its claims .......................................11

7.    The Board's final written decision ........................................... 12

IV.    SUMMARY OF THE ARGUMENT ............................................. 13

V.    ARGUMENT ...................................................................... 15

A.    Standard Of Review ........................................................... 15

B.    This Court Lacks Jurisdiction to Review the Director's
       Decision to Institute an IPR ............................................... 15

       1.    The scope of what is non-reviewable includes privity
              determinations under section 315(b) ........................................ 18

       2.    The institution decision does not become reviewable
              simply because parts of it are reiterated in the final
              written decision ........................................................ 19

C.    If This Court Reaches the Issue, the Board Correctly Concluded
       That Synopsys Was Not Estopped From Filing a Petition Under
       35 U.S.C. § 315(b) Because of Its Relationship with EVE. .............. 20

       1.    The plain language of section 315(b) requires the
              privity/real-party-in-interest determination to be based on
              the petitioner's relationships at the time of filing the
              petition .................................................................... 20

       2.    Even if the statute were ambiguous, the USPTO's
              regulations specify that the "petitioner" is the "filer" ............. 22

       3.    The Board correctly concluded that section 315(b) did
              not preclude Synopsys from filing a petition ........................... 25

       4.    The Board correctly denied Mentor's motion for
              discovery on the privity issue ................................... 27

D.    The Board's Final Written Decision Need Address Only Claims
       That Remain Contested at the End of the Proceedings ..................... 29

1.  Assuming this Court reaches the issue, the Board's
    decision to institute on only some claims comports
    with agency regulations and the IPR statutes............................30

    a.  Under Chapter 31, the Director has complete
        discretion to deny institution...............................30

    b.  The Director has properly promulgated regulations
        that permit institution whenever the statutory criteria
        are met................................................................33

    c.  Synopsys improperly tries to import limitations on
        the Director's authority to institute from a separate
        statutory provision............................................36

    d.  SAS's additional statutory arguments do not compel
        a different conclusion ........................................39

2.  Synopsys's attempts to circumvent the reviewability bar
    by purporting to challenge the final written decision
    is unavailing ..............................................................31

E.  The Board Correctly Denied Mentor's Motion to Amend..................41

    1.  The USPTO properly promulgated rules governing
        motions to amend pursuant to a statutory delegation
        of authority..............................................................42

    2.  The Board's decision to have the moving party bear
        the burden of proof is a proper interpretation of its rules ..........44

    3.  Placing the burden of proof on the patent owner does not
        violate the separate burden of proof requirement set forth
        in 35 U.S.C. § 316(e) .................................................47

    4.  The Board's procedural decisions to deny Mentor extra
        pages for its briefing are entitled to deference ...........................49

VI.  CONCLUSION .........................................................................55

iii

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>:

*Auer v. Robbins*, 519 U.S. 452 (1997) ............................................................*passim*

*Bates v. United States*, 522 U.S. 23 (1997) ...........................................................38

*Belkin Int'l Inc. v. Kappos*, 696 F.3d 1379 (Fed. Cir. 2012) ..................................19

*Brixham Solutions, Ltd. v. Juniper Networks, Inc.*, No. 3-13-cv-00616,
2014 WL 1677991 (N.D. Cal. Apr. 28, 2014) .........................................................39

*Cheney v. U.S. Dist. Ct. D.C.*, 542 U.S. 367 (2004) ..............................................17

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984).............................................................................................*passim*

*City of Arlington, Tex. v. F.C.C.*, 133 S. Ct. 1863 (2013) ....................25, 41, 43, 50

*Cuozzo Speed Techs., LLC, In re*, -- F.3d --, No. 2014-1301,
2015 WL 448667 (Fed. Cir., Feb. 4, 2015).   .................................................*passim*

*Dominion Dealer Solutions, LLC., In re*,
749 F.3d 1379 (Fed. Cir. 2014) .......................................................................2, 17

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) .....................57

*Graham v. John Deere Co.*, 383 U.S. 1 (1966) ......................................................45

*Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004) ......................22

*Idle Free Sys. Inc. v. Bergstrom, Inc.*, IPR2012-0027 (June 11, 2013) ......44, 45, 46

*Lovin, In re*, 652 F.3d 1349 (Fed. Cir. 2011) ...................................................42, 44

*Nat'l Cable and Telecomm Ass'n v. Gulf Power Co.*,
534 U.S. 327 (2002) ...............................................................................................47

*Procter & Gamble Co., In re*, 749 F.3d 1376 (Fed. Cir. 2014) .............................29

*Para-Ordnance Mfg., Inc. v. SGS Imp. Int'l, Inc.*,
73 F.3d 1085 (Fed. Cir. 1995) ...................................................................45

*Russello v. United States*, 464 U.S. 16 (1983) ........................................38

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
749 F.3d 1373 (Fed. Cir. 2014) ........................................................*passim*

*Sullivan, In re*, 362 F.3d 1324 (Fed. Cir. 2004)................................15, 48

*Taylor v. Sturgell*, 553 U.S. 880 (2008) ..................................................26

## **Statutes:**

5 U.S.C. § 706......................................................................................15

18 U.S.C. § 1001..................................................................................29

28 U.S.C. § 1295...................................................................................1

35 U.S.C. § 102.................................................................................4, 42

35 U.S.C. § 103...................................................................................42

35 U.S.C. § 112...................................................................................42

35 U.S.C. § 141...................................................................................17

35 U.S.C. § 303...................................................................................31

35 U.S.C. § 304...................................................................................31

35 U.S.C. § 305...................................................................................31

35 U.S.C. § 311...........................................................................4, 5, 25

35 U.S.C. § 312 ........................................................................5, 31, 32

35 U.S.C. § 313 ........................................................................ 5, 10, 32

35 U.S.C. § 314 ............................................................................... *passim*

35 U.S.C. § 315 ............................................................................... *passim*

35 U.S.C. § 316 ............................................................................... *passim*

35 U.S.C. § 318 ............................................................................... *passim*

35 U.S.C. § 319 ............................................................................... *passim*

Leahy-Smith America Invents Act, Pub. L. No. 112-29,
125 Stat. 284 (2011) ....................................................................... *passim*

## **Regulations:**

37 C.F.R., part 42 ..................................................................... 5, 7, 46

37 C.F.R. § 42.2 ........................................................................ 23, 25

37 C.F.R. § 42.4 ........................................................................ 6, 18

37 C.F.R. § 42.8 ............................................................................. *passim*

37 C.F.R. § 42.11 .............................................................................. 29

37 C.F.R. § 42.12 .............................................................................. 29

37 C.F.R. § 42.20 ........................................................................... *passim*

37 C.F.R. § 42.24 ...................................................................... 7, 11, 50

37 C.F.R. § 42.51 ...................................................................... 8, 9, 27

37 C.F.R. § 42.100 ............................................................................ 5

37 C.F.R. § 42.101 ................................................................. 12, 23, 25

37 C.F.R. § 42.104 ........................................................................ *passim*

37 C.F.R. § 42.107 ................................................................................38

37 C.F.R. § 42.108 ...............................................................6, 33, 34, 35

37 C.F.R. § 42.121 ........................................................................*passim*

37 C.F.R. § 90.3 ....................................................................................1

## **Other Authorities:**

154 Cong. Rec. S9988-89 (daily ed. Sept. 27, 2008) ............................27

157 Cong. Rec. S1375-77 (daily ed. Mar. 8, 2011) .........................27, 32

*Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents*, 77 Fed. Reg. 48,680 (Aug. 14, 2012) ..................................*passim*

H.R. Rep. No. 112-98 (2011)...................................................................32

*Office Trial Practice Guide*, 77 Fed. Reg. 48,756 (Aug. 14, 2012) .............5, 25, 35

Wright & Miller § 4451 ..........................................................................26

## STATEMENT OF RELATED CASES

The Director adopts the Statement of Related Cases in the principal briefs of Synopsys, Inc. and Mentor Graphics Corporation.

In addition, this Court's decision in *Versata Development Group, Inc. v. SAP America, Inc. et al.*, No. 2014-1194 (reviewability of institution decisions); *Helferich Patent Licensing, LLC v. CBS Interactive, Inc.*, No. 2014-1556 (burden of proof on motions to amend); *ConvaTec Technologies, Inc. v. Smith & Nephew, Inc.*, No. 2014-1822, -1823 (burden of proof on motions to amend), *Achates Reference Publishing v. Apple, Inc*., Nos. 14-1767, 14788 (burden of proof on motions to amend) may directly affect, or be directly affected by, this Court's decision in this appeal.

# I.     STATEMENT OF JURISDICTION

This appeal arises from a final written decision of the Patent Trial and Appeal Board ("PTAB" or "Board") in an inter partes review proceeding.  The Board entered its final written decision on February 19, 2014.  Synopsys, Inc. ("Synopsys") filed a notice of appeal of the Board's final written decision on April 22, 2014, within the time limit specified by 37 C.F.R. § 90.3(a)(1).  A849-55. Mentor Graphics Corporation ("Mentor") timely filed a notice of cross-appeal pursuant to Fed. R. App. P. 4(a)(3) on May 2, 2014.  A856-62.

As explained in Section V.B. of this brief, this Court lacks jurisdiction to review the USPTO's decision to institute the inter partes review, which is "final and nonappealable."  35 U.S.C. § 314(d); *In re Cuozzo Speed Techs., LLC*, -- F.3d --, No. 2014-1301, 2015 WL 448667, at *3 (Fed. Cir., Feb. 4, 2015).  This Court otherwise has appellate jurisdiction over this appeal and cross-appeal of the Board's final written decision under 28 U.S.C. § 1295(a)(4)(A).

# II.     STATEMENT OF THE ISSUES

## *Jurisdictional Issues*

Mentor and Synopsys both challenge conclusions that the Board made as part of its decision to institute this inter partes review ("IPR"), presenting the following issues:

### *Mentor – Jurisdictional Issues*

(1) Whether this Court has jurisdiction to review the Board's determination that 35 U.S.C. § 315(b) did not estop Synopsys from filing a petition for an IPR, notwithstanding this Court's holding in *Cuozzo*, 2015 WL 448667, at *3;

(2) If the Court reaches the merits, whether (a) the Board correctly based its privity determination on Synopsys's relationships at the date the petition was filed, and (b) whether the Board abused its discretion in denying Mentor additional discovery into Synopsys's relationships that allegedly would have triggered the estoppel provisions under 35 U.S.C. § 315(b).

### *Synopsys – Jurisdictional Issues*

(1) Whether this Court has jurisdiction to review the Board's decision not to institute an IPR for claims the Board determined did not meet the "reasonable likelihood" test under 35 U.S.C. §314(a), notwithstanding this Court's holdings in *Cuozzo*, 2015 WL 448667, at *4, *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373 (Fed. Cir. 2014), and *In re Dominion Dealer Solutions, LLC*, 749 F.3d 1379, 1380 (Fed. Cir. 2014);

(2) If this Court reaches the merits, whether the Board's decision not to institute on claims failing to meet the reasonable likelihood standard is a permissible interpretation of Agency regulations, and whether those regulations are valid exercise of the Agency's rulemaking authority.

***Mentor - Motion to Amend Issues***

Mentor also argues that the Board improperly required the patent owner to bear the burden of proof in motions to amend.  This argument presents the following issues:

(1) Whether the Board's determination that Mentor bore the burden of proof on its motion to amend is plainly erroneous or inconsistent with the Agency's regulations;

(2) Whether the Agency's regulations governing motions are consistent with 35 U.S.C. § 316(e), which requires a petitioner to bear the burden of proof for the claims that it has challenged;

(3) Whether the Board abused its discretion in ruling on procedural motions involving page limits.

## III.   STATEMENT OF THE CASE

### A.   Introduction

Mentor Graphics Corporation ("Mentor") owns U.S. Patent No. 6,240,376 ("the '376 patent").  Synopsys, Inc. ("Synopsys") filed a petition with the U.S. Patent and Trademark Office ("USPTO") to institute an inter partes review for claims 1-15 and 20-33 of the '376 patent.  Mentor filed a preliminary response, arguing that Synopsys was estopped from bringing a petition because of its relationship with Emulation and Verification Engineering, S.A. and EVE-USA,

Inc. (collectively, "EVE") pursuant to 35 U.S.C. § 315(b).  The USPTO granted

Synopsys's petition-in-part, instituting a proceeding for a subset of the claims in

presented in the petition (claims 1-9, 11, 28, and 29) and denying Mentor's

estoppel argument.  The Board ultimately issued a final written decision

concluding that only claims 5, 8, and 9 were unpatentable under 35 U.S.C.

§ 102(e).  The Board also denied Mentor's contingent motion to amend these

claims.

**B.    Statutory And Regulatory Background**

Inter partes review ("IPR") was created by the AIA's amendments to

Chapter 31 of title 35, United States Code, which formerly governed inter partes

reexamination.  *See* Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-

29, 125 Stat. 284, § 6(a) (2011).  A panel of Board judges conducts IPR

proceedings as "trials" rather than the single patent examiner who had been

responsible for examination under inter partes reexaminations.  35 U.S.C. § 316(c);

35 U.S.C. § 314(a) (May 2011).  IPRs must be completed within one year, with

limited exceptions.  35 U.S.C. §§ 311(b), 316(a)(11).

Chapter 31 sets forth a framework for IPR proceedings, *see* 35 U.S.C.

§§ 311-319, and contains several express delegations of authority to the USPTO

Director to promulgate regulations "establishing and governing inter partes review

under this chapter."  35 U.S.C. § 316(a)(4); *see also* 35 U.S.C. §§ 316(a)(1)-(13).

4

In prescribing the regulations, the Director "shall consider the effect of any such regulation on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter." 35 U.S.C. § 315(b).

Pursuant to this delegation, the Director issued a series of proposed rules in February 2012, hosted public meetings to introduce the rules across the country, and ultimately received 251 written comments. 77 Fed. Reg. 48756 (August 14, 2012). The Office issued final rules in August 2012, codified in Part 42 of Title 37 of the Code of Federal Regulations. Subpart A sets forth regulations governing all post-grant proceedings (including post-grant reviews, IPRs, and covered business method reviews), 37 C.F.R. §§ 42.1-.42.80. Subpart B provides regulations specific to IPRs. 37 C.F.R. §§ 42.100-42.123. The Director also issued an Office Patent Trial Practice Guide "to advise the public on the general framework of the rules, including the structure and times for taking action in each of the new proceedings." 77 Fed. Reg. 48756, 48757 (Aug. 14, 2012).

### 1.    Institution of an IPR proceeding

A person who is not the owner of a patent may file "a petition to institute" an IPR. 35 U.S.C. § 311(a). This petition must meet several statutory and regulatory requirements. 35 U.S.C. § 312; 37 C.F.R. § 42.104. The patent owner can file a preliminary response if it so chooses. 35 U.S.C. § 313. On the basis of

5

the petition and any response, the Board has three months to decide whether to "institute" an IPR.  35 U.S.C. § 314; 37 C.F.R. § 42.4(a).

The Board cannot institute an IPR unless "there is a reasonable likelihood that the petitioner would prevail with respect to at least one of the claims challenged in the petition."  35 U.S.C. § 314(a).  The Board also cannot institute an IPR if the petitioner, or its real-party-in-interest, has previously filed a civil suit challenging the patent, 35 U.S.C. § 315(a)(1), or "if the petition requesting the proceeding is filed more than one year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent."  35 U.S.C. § 315(b).

The regulations accordingly require the petitioner to file a notice listing any real-parties-in-interest and certify that it is not estopped from filing a petition.  37 C.F.R. §§ 42.8(b)(1), 42.104(a).  Then, provided that at least one claim meets the reasonable likelihood test, the Board "may authorize the review to proceed on <u>all or some</u> of the challenged claims."  37 C.F.R. §§ 42.108(a) (emphasis added), 42.108(c).  The Practice Guide further advises that "the Board may authorize the review to proceed on the challenged claims for which the threshold requirements for the proceeding have been met."  77 Fed. Reg. 48689 (Aug. 14, 2012).

By statute, the Board's decision to institute is "final and nonappealable." 35 U.S.C. § 314(d).

## 2. IPR trial and the final written decision

After an IPR is instituted, the "trial" phase begins. *See* 35 U.S.C. §§ 315-318; 37 C.F.R. §§ 42.120-42.123. The patent owner must file its "patent owner response" along with evidence or affidavits, and both parties may depose the other's affiants, and participate in an oral hearing before the Board. 35 U.S.C. §§ 316(a)(5)(A), 316(a)(8), 316(a)(10); 37 C.F.R. § 42.120(b)(1)(ii). By statute, the petitioner "shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence." 35 U.S.C. § 316(e). If the IPR is "instituted and not dismissed . . . the [PTAB] shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d)." 35 U.S.C. § 318(a). This final written decision with respect to patentability is reviewable by this Court. 35 U.S.C. §§ 319, 318(a).

## 3. Motion practice during IPR proceedings

During the proceedings, parties must file motions if they seek relief of any form (other than what was sought in the initial petition). 37 C.F.R. § 42.20(a). For all motions, "[t]he moving party has the burden of proof to establish that it is entitled to the requested relief." 37 C.F.R. § 42.20(c). Such motions have set page limits. 37 C.F.R. § 42.24.

### *Motions for claim amendments*

A patent owner has the statutory right to file at least one motion to amend its claims.  35 U.S.C. § 316(d).  The Director is further authorized to "set[] forth standards and procedures for allowing the patent owner to move to amend the patent under subsection (d)."  35 U.S.C. § 316(a)(9).  After motion practice, the Board must address the patentability of any new claim added by amendment in its final written decision.  35 U.S.C. § 318(a).  There is never a separate examination of any proposed amendment in accordance with the otherwise-usual examination procedures of 35 U.S.C. §§ 131-33.

### *Motions for additional discovery*

Parties may also file motions for additional discovery.  37 C.F.R. § 42.51(b)(2).  By statute, the Director is authorized to issue regulations "setting forth standards and procedures for discovery of relevant evidence," but the statute also requires that "such discovery shall be limited to . . . what is otherwise necessary <u>in the interest of justice</u>."  35 U.S.C. § 316(a)(5) (emphasis added).   The regulations provide for certain mandatory and limited discovery.  37 C.F.R. § 42.51.  The Board may also authorize "additional discovery" (if not agreed to by the parties) upon a showing that such discovery is "in the interest of justice," in line with the statutory standard.  37 C.F.R. § 42.51(b)(2).

**C.    Factual Background and Procedural History**

**1.    Mentor's '376 patent**

The '376 patent, entitled "Method and Apparatus for Gate-Level Simulation of Synthesized Register Transfer Level Designs with Source-Level Debugging," issued on May 29, 2001 from application no. 09/127,584, which was filed on July 31, 1998.  A95.  It named Alain Raynaud and Luc Burgun as inventors.  *Id.*  They assigned the patent to Mentor. A1841-42.

**2.    2006 infringement litigation between Mentor and EVE**

On May 19, 2006, Mentor filed a civil action accusing EVE, inter alia, of infringing the '376 patent by using, selling and supporting EVE's product, the "ZeBu" verification system.  A1566, A1562-68.  This case was dismissed with prejudice in December 2006 after Mentor and EVE reached a settlement.  A1572.

**3.    Synopsys's petition and subsequent acquisition of EVE**

On September 26, 2012, Synopsys filed a petition seeking inter partes review of claims 1-15, and 20-33 of the '376 patent.  A139, A198, A201.  On September 27, 2012, Synopsys filed a declaratory judgment action against Mentor in the Northern District of California, alleging non-infringement and invalidity of the '376 patent.  A1573-1588.  As co-plaintiffs, the complaint listed Emulation and Verification Engineering, S.A., and EVE-USA, Inc. (i.e., "EVE").  A1573.  The complaint stated that "[o]n September 27, 2012, Synopsys, Inc., entered into an

agreement to acquire the business of EVE, including the ZeBu Products. The

proposed acquisition is expected to close in the immediate future." A1577.

According to public press releases, Synopsys completed the acquisition of EVE on

October 4, 2012. A1590, A1861.

### 4.    Mentor's preliminary response and the Board's institution decision

Mentor filed a preliminary response under 35 U.S.C. § 313 arguing, inter

alia, that Synopsys was estopped under 35 U.S.C. § 315(b) from filing a petition

because of its associations with EVE. A242-50.

The Board, in its institution decision, disagreed. The Board instead

concluded that Mentor did "not provide persuasive evidence that Synopsys and

EVE were in privity on the filing date of the petition." A16; *see also* A15-18. The

Board further concluded that Synopsys had only shown a reasonable likelihood of

prevailing on claims 1-9, 11, 28, and 29, and instituted proceedings only on those

claims. A40.

### 5.    Mentor's rehearing request and attempt to obtain additional discovery on Synopsys's relationship with EVE

After the Board's institution decision, Mentor sought "additional discovery"

into Synopsys's relationship with EVE by motion. A339-53. The proposed

discovery requests, attached as exhibits, included fifteen requests for documents,

ten interrogatories, twenty-three requests for admission, and six deposition topics

10

for a representative of Synopsys.  A345, citing to A1813-41.  The document

requests were worded to encompass a wide range of documents, such as

"[c]ommunications before October 4, 2012 regarding or relating to [named

inventor] Burgun's role at Synopsys."  A1817, Request No. 7.

The Board denied Mentor's motion for additional discovery, A378-85,

reasoning in part that the requests did not meet the "in the interests of justice"

standard because Mentor did not show that it was unable to get sufficient

information without discovery and because the requests were overly burdensome.

A383-84.

### 6.    Mentor's motion to amend its claims

During the IPR, Mentor filed a contingent motion to amend its claims.

A465-90.  The Board rejected this motion for failing to conform with page

limitations requirements, 37 C.F.R. § 42.24(a)(1)(v), and Mentor was given leave

to re-file. A491-93.  Mentor then filed a substitute motion without the claims

appendix. A494-514.

Synopsys filed an opposition to Mentor's motion.  A528-548.  Mentor had at

least twenty days to submit its reply.  *See* A294.  On the day before the reply was

due, Mentor contacted the Board to convene a telephonic hearing with the Board

and all parties, during which Mentor asked to increase the page limit for the reply

from five pages to eight.  A589.  The Board denied the request, citing the need to

keep inter partes review motions papers focused—the purpose of the page

limitation—and the last minute nature of the request.  A588-90.  Mentor then

submitted a conforming reply.  A577-87.

### 7.    The Board's final written decision

On February 19, 2014, the Board entered a final written decision concluding

that claims 5, 8, and 9 were unpatentable, and that Synopsys had not met its burden

to show that the remaining, instituted claims were unpatentable (claims 1-4, 6, 7,

11, 28, and 29).  A42-44, A42-94.

The Board additionally reaffirmed its conclusion from the institution

decision that Synopsys was not estopped from filing suit by 35 U.S.C. § 315(b), in

response to Mentor's arguments to the contrary in its patent owner's response.

A52-57; A406-17.  The Board explained that the relevant regulation, 37 C.F.R.

§ 42.101(b) "makes clear that it is only privity relationships up until the time a

petition is filed that matter; any later-acquired privies are irrelevant."  A53.  The

Board reasoned that there had been no relationship between Synopsys and EVE

during the prior 2006 litigation and that there was no indication that Synopsys filed

the petition in attempt to derail concurrent civil litigation.  A53-55.  The Board

further concluded that EVE was not a real-party-in-interest because the evidence

did not show EVE to control or direct the filing of the IPR petition.  A56.

After the Board determined that claims 5, 8, and 9 were unpatentable, it considered Mentor's contingent motion to amend these claims with proposed substitute claims 35, 40, and 41.  A83-89.  Board found that Mentor successfully demonstrated that its proposed substitute claims were not anticipated by the prior art reference of record, U.S. Patent No. 6,132,109 ("Gregory").  A87; A1103-1148.  The Board concluded, however, that Mentor had not met its burden of proving that the proposed claims would have been nonobvious over the prior art as a whole.  A87.  The Board found that Mentor made only a conclusory allegation that Gregory was the closest known prior art rather than providing a general description of the relevant field of prior art and level of skill of an ordinary artisan.  A87-89.  The Board accordingly declined to enter the proposed substitute claims.  A93.

## IV.    SUMMARY OF THE ARGUMENT

Mentor and Synopsys both challenge several aspects of the Board's actions and procedures.  In the first instance, this Court lacks jurisdiction over the parties' challenges to the Board's institution decision—which includes Mentor's argument that Synopsys was estopped from filing a petition and Synopsys's argument that the Board had to institute on all claims presented in Synopsys's petition.

Even were the Board's institution decision subject to review by this Court, the Board's actions were proper.  First, the Board correctly applied the estoppel provision of 35 U.S.C. 315(b) to conclude that Synopsys was <u>not</u> estopped from

13

filing a petition, because Synopsys entered into a relationship that arguably triggered the estoppel provision only after filing its petition. The Board's related decision to deny "additional" discovery into the privity issue was also correct in light of the stringent "interest of justice" standard articulated by Congress for such discovery. Second, the Board's decision to institute an IPR on challenged claims for which the Board determined that there was a reasonable likelihood that Synopsys would prevail fall well within the Board's discretion under the governing regulations, which in turn, are a permissible exercise of the Agency's rulemaking authority under the AIA.

Finally, Mentor challenges the Board's approach to amending claims in IPRs, particularly that the patent owner (i.e., Mentor) must show patentability of the proposed amended claims over the prior art. The Board's decision to place the burden of proof on Mentor, however, is a correct interpretation of the Agency's regulations, which require all movants to bear the burden of proof for their motion. The Board's approach is also a sensible one for ensuring that, if a new claim is added and thus becoming a new part of the issued patent, it meets standard patentability requirements even though it has not gone through a traditional examination process.

# V.    ARGUMENT

## A.    Standard of Review

Regulations issued by the USPTO under a statutory grant of rulemaking authority are entitled to deference unless based on an unreasonable construction of the statute, *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Cuozzo*, 2015 WL 448667, at *8, and the USPTO's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with regulation," *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks omitted).  The Board's actions may not be set aside unless "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law."  *In re Sullivan*, 362 F.3d 1324, 1326 (Fed. Cir. 2004); 5 U.S.C. § 706(2)(A).

## B.    This Court Lacks Jurisdiction To Review the Director's Decision To Institute an IPR.

a.  Both Mentor and Synopsys challenge aspects of the institution decision. Mentor contends the Board's institution decision was in error because Synopsys's acquisition of EVE should have estopped Synopsys from filing a petition pursuant to 35 U.S.C. § 315(b).  Synopsys contends that the Board's <u>final written decision</u> must address all claims presented in the initial petition.  Synopsys Br. at 68-76.  As explained in section V.D.2, *infra*, the logical import of Synopsys's argument that the final decision must address all claims presented in the petition is that the Board

15

must institute a trial on all claims presented in the petition.  Accordingly, Synopsys's argument is, in effect, a challenge to the institution decision.

Neither of these aspects of the institution decision are reviewable by this Court  because Congress specifically provided that the USPTO's decision "whether to institute" such a proceeding "shall be final and nonappealable," 35 U.S.C. § 314(d), and authorized this Court to review only the Board's final written decision as to patentability, *see* 35 U.S.C. §§ 319, 318(a).  This Court has agreed that "[section] 314(d) prohibits review of the decision to institute an IPR even after a final decision."  *Cuozzo*, 2015 WL 448667, at *3.

Mentor argues that section 314(d) simply postpones judicial review of the USPTO's decision to institute an inter partes review until the Board issues a final written decision appealable under section 319.  Mentor Br. at 49-53.[1]  But this Court has already squarely rejected that argument.[2]  In *Cuozzo*, this Court noted

---

[1] As Mentor notes, Mentor Br. at 49, the government previously argued tin related district court proceedings that judicial review of the Director's institution decision would be available.  *Mentor Graphics Corp. v. Lee*, No. 13-cv-518, dkt. 38 (May 24, 2013).  After further study, for the reasons discussed above, the government has concluded that view to be incorrect, as has this Court.  *See Cuozzo*, 2015 WL 448667, at *3.

[2] To the extent that mandamus review of the institution decision may be sought by parties after the Board's final decision, *Cuozzo*, 2015 WL 448667, at *4 (noting that mandamus "*may* be available to challenge the PTO's decision to grant a petition to institute IPR after the Board's final decision in situations where the PTO has clearly and indisputably exceeded its authority" but that the court "need not decide whether mandamus to review institution of IPR after a final decision is

that the a party challenging an institution decision argued "that § 314(d) does not completely preclude review of the decision to institute IPR, but instead merely postpones review of the PTO's authority until after the issuance of a final decision by the Board." *Cuozzo*, 2015 WL 448667, at *3.  Looking to the plain language of section 314(d), this Court explained that "[a] declaration that the decision to institute is 'final' cannot reasonably be interpreted as postponing review until after issuance of a final decision on patentability." *Id.*  Furthermore, this Court made clear that such a reading of the statute would render it redundant with other parts of the statute, because "§ 319 and § 141(c) already limit appeals to appeals from final decisions," and thus "§ 314(d) would have been unnecessary to preclude non-final review of institution decisions . . . [and] must be read to bar review of all institution decisions, even after the Board issues a final decision." *Id.*

---

available") (emphasis added), neither Mentor nor Synopsys has sought such relief here.  But assuming such a remedy were available and the parties had sought it, such relief would not be appropriate here.  Neither Synopsys or Mentor can show that their "right to issuance of the writ is clear and indisputable." *Cuozzo*, 2015 WL 448667, at *4, quoting *Cheney v. U.S. Dist. Court for the D.C.*, 542 U.S. 367, 381 (2004).  For Mentor, "it is at least beyond dispute that there is no clear and indisputable right that precludes institution of the IPR proceeding." *Cuozzo*, 2015 WL 448667, at *4.  Synopsys, similarly, has no absolute right to challenge claims that the Board has concluded do not meet the threshold "reasonable likelihood" test, even by mandamus.  *See id.*; *St. Jude*, 749 F.3d at 1375; *Dominion Dealer*, 749 F.3d at 1381.

b.  Mentor presents additional arguments for why review should be available here.  Mentor Br. at 48-53.  As discussed further below, Mentor's arguments are not persuasive.

### 1.    The scope of what is non-reviewable includes privity determinations under section 315(b).

As an initial matter, the bar on reviewability in 35 U.S.C. § 314(d) includes the Director's determination of whether the petitioner is estopped from filing a petition under section 315(b).  *See St. Jude*, 749 F.3d at 1375-76.  In *St. Jude*, the patent owner sought to appeal the Board's denial to institute an IPR after the Board held that petitioners were estopped from filing a petition pursuant to 35 U.S.C. § 315(b).  *Id.* at 1375.  This Court held that it lacked authority to review this denial, explaining that IPRs proceed in two phases: institution and trial ("conduct").  *Id.* at 1375-76.  The Court reasoned that the estoppel determination under section 315(b) is part of the Director's institution decision,[3] and hence, unreviewable per section 314(d).  *Id.* at 1376.  The same reasoning applies here: the Board made a determination regarding the estoppel provision of section 315(b) as part of its institution decision, and because the estoppel determination is part of the institution decision, it is non-reviewable by this Court pursuant to 35 U.S.C. § 314(d). This is because the bar on reviewability covers all the considerations the

---

[3] This authority has been delegated to the Board by regulation.  37 C.F.R. § 42.4(a).

18

Director must as part of the institution decision, and section 315(b) expressly sets out conditions relevant to "institution."  *See* 35 U.S.C. § 315(b) ("An inter partes review may not be *instituted* if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent.").

### 2. The institution decision does not become reviewable simply because parts of it are reiterated in the final written decision.

Mentor also argues that the privity determination under section 315(b) is reviewable because the Board's final decision restated and reaffirmed this part of the institution decision.  Mentor Br. at 53. The Board's repetition of its section 315(b) decision in its final written decision does not alter its reviewability status. This Court has said as much in similar circumstances in the inter partes reexamination context:  "[t]o allow an otherwise non-appealable decision by the Director to become appealable simply by raising it a second time during the later reexamination would impermissibly circumvent the statutory bar on appeals." *Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379, 1383-84 (Fed. Cir. 2012).  Moreover, the statutory provisions governing IPR appeals to this Court, 35 U.S.C. §§ 319, 318(a), further affirm that this Court's review is limited to issues of patentability rather than any of the preliminary issues considered at the institution stage.  35 U.S.C. §§ 314(a), 315(a)(1), 315(b).

**C.    If this Court Reaches the Issue, the Board Correctly Concluded That Synopsys Was Not Estopped From Filing a Petition Under 35 U.S.C. § 315(b) Because of Its Relationship with EVE.**

Although the USPTO maintains that the Director's decision regarding whether a petitioner is estopped from filing an IPR is non-reviewable, the Director's decision was, in any event, correct on the merits.  The Board correctly made the estoppel determination based on the facts as they appeared in Synopsys's petition—an approach that is in line with the Agency's regulations and the governing statutes.  The Board also did not abuse its discretion in denying additional discovery in Synopsys's relationship with EVE because of the sufficiency of the available factual evidence and the overbreadth of Mentor's requests.

**1.    The plain language of section 315(b) requires the privity/real-party-in-interest determination to be based on the petitioner's relationships at the time of filing the petition.**

The plain language of the relevant statutory provision, 35 U.S.C. § 315(b), is read most naturally as predicating estoppel on the relationships that the petitioner has with others when the petitioner files the petition.  In relevant part, section 315(b) provides that

> An inter partes review may not be instituted if the <u>petition</u> requesting the proceeding <u>is filed</u> more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent.

20

(Emphasis added).  The language of the statute makes the institution decision turn on the contents of the petition.  And the petition can only be expected to include information about the petitioner's current status—i.e., only about relationships existing at the time of filing the petition.  In other words, the "petitioner" to which the statute refers must be the "filer."

Mentor contends, in contrast, that what matters is not what the petition says, but rather, what the petition says as modified by any supplemental information about the petitioner's relationship status may have changed between filing and institution.  To arrive at this interpretation, Mentor creates a third point in time that has relevance to the inquiry—the date of institution—but hardly explains where this third point in time can be derived from the statutory text, explaining only that "[b]ecause the text of § 315(b) speaks to whether the Board may institute review, the relevant event for determining the status of privies is the Board's decision to institute review."  Mentor Br. at 55.  But just because this subsection creates a statutory bar on institution does not mean that "institution" becomes an additional point in time on which an inquiry must be made.

In addition, Mentor's interpretation of the statute would be unworkable.  Mentor's position would require the Board to know the status of the petitioner at the exact moment it institutes a proceeding.  This non-sensical result is unlikely to be what Congress intended, particularly given that similar jurisdictional inquiries

are made in district court litigation based on the events as they existed when the action was brought, known as the "time-of-filing" rule. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 580 (2004) ("The time-of-filing rule is what it is precisely because the facts determining jurisdiction are subject to change, and because constant litigation in response to that change would be wasteful.").

Mentor also contends that this interpretation cannot be right because it permits gamesmanship. Mentor Br. at 55. Mentor is correct that a party could structure its interactions to get around this bright-line rule by not entering into certain relationships before filing an IPR petition. But the same is true under the rule that Mentor endorses; the point in time would simply be institution rather than filing. Thus, this policy argument provides no principled way to choose between these two interpretations, and at any rate, could not override the clear import of the words of the statute themselves.

### 2. Even if the statute were ambiguous, the USPTO's regulations specify that the "petitioner" is the "filer."

Thus, while the best reading of the statute is that a "petitioner" is the "filer," to the extent there is an ambiguity in what the statute means, it concerns "who" is the petitioner: the party that files the petition or the party (and its associates) when the proceeding is instituted? The USPTO regulations answer this question in two places. First, "[p]etitioner" is explicitly defined as "the <u>party filing a petition</u>

requesting that a trial be instituted." 37 C.F.R. § 42.2 (emphasis added).[4]  Second,

the regulation that incorporates the requirements of section 315(b) also answers the

question "who" may file, as shown by its heading: "Who may petition for inter

partes review."  37 C.F.R. § 42.101(b).  This section reads, in relevant part:

### 42.101  Who may petition for inter partes review

A person who is not the owner of a patent may file with the Office a
petition to institute an inter partes review of the patent unless:

. . .

(b) The petition requesting the proceeding is filed more than one year
after the date on which the petitioner, the petitioner's real-party-in-
interest, or a privy of the petitioner is served with a complaint alleging
infringement of the patent . . . .

The only logical way to read subsection (b) is that it asks the "person who is not

the owner of a patent" who is about to file a petition to consider the relationships

that they currently have.  37 C.F.R. 42.101(b).  This interpretation is reflected in

the relevant regulations, which require the petitioner (e.g., Synopsys) to provide, in

the petition, any real-parties-in-interest it may have and attest that it is not estopped

from filing a petition.  37 C.F.R. §§ 42.8(b)(1) (real-party-in-interest notice);

42.104(a) (estoppel certification).

Mentor's arguments do not address the explicit definition of "petitioner" in

37 C.F.R. § 42.2.  *See* Mentor Br. at 56-60.  But, in reference to section 42.101(b),

---

[4] The definitions set forth in this section apply to all of part 42.  37 C.F.R.
§ 42.2.

Mentor contends that "who" is not the right question to ask. Mentor Br. at 57. But, as explained above, "who" is exactly the right question to ask, and at any rate, is simply an alternative way of asking what point in time is relevant.

Mentor also argues that such an interpretation cannot be right because it conflicts with the USPTO's explanation that it would adopt a case-by-case approach to determining real-party-in-interest and privity. Mentor Br. at 57, quoting 77 Fed. Reg. at 48,688. But Mentor misreads this part of the Board's Trial Practice Guide. This section discusses the substantive inquiry about whether two parties are real-parties-in-interest or privies, which is distinct from the question of what point in time having such a relationship matters. Of course, at any given point in time when this inquiry must be made, the Board would have to consider all the relevant facts on case-by-case basis per the Board's guidelines.

Congress granted the USPTO broad authority to craft the details of IPR procedures. 35 U.S.C. § 316(a)(4); *see Cuozzo*, 2015 WL 448667, at *8 ("[T]he AIA granted new rulemaking authority to the PTO."). Thus, to the extent there are ambiguities in the statute, the USPTO has promulgated regulations after a notice-and-comment period. These regulations are reasonable, as the discussion above

demonstrates, and therefore are entitled to deference.[5] *See City of Arlington, Tex. v. F.C.C.*, 133 S. Ct. 1863, 1868 (2013).

### 3.     The Board correctly concluded that section 315(b) did not preclude Synopsys from filing a petition.

The Board correctly concluded that Synopsys was not barred from filing a petition under 35 U.S.C. § 315(b) because, at the relevant time, it did not have the requisite privity or real-party-in-interest relationship with EVE.

The Patent Trial Practice Guide characterizes a "real-party-in-interest" for purposes of section 315(b) as "the party that desires review of the patent . . . [who] may be the petitioner itself, and/or it may be the party or parties at whose behest the petition has been filed."  77 Fed. Reg. at 48759.  Privity is characterized as a "more expansive" concept that "[u]ltimately . . . seeks to determine whether the relationship . . . is sufficiently close such that both [parties] should be bound by the trial outcome and related estoppels." *Id.*  The Guide acknowledges that these inquiries should be made on a case-by-case basis, and also lists several factors that may be considered in such an analysis.  77 Fed. Reg. at 48769-70.

---

[5] Moreover, the Board's interpretation of its regulations would be entitled to deference here, contrary to Mentor's argument to the contrary on the basis that the USPTO's regulation is too similar to the statutory text of 315(b) to be accorded interpretive weight.  Mentor Br. at 57, n.11.  While the language of section 42.101(b) is similar to section 315(b), the structure of section 42.101 demonstrates that the USPTO took a position on the interpretive question of "who" may file a petition by combining several statutory provisions, including at least 35 U.S.C. §§ 311(a), 315(a)(1), 315(b), and 315(e)(1).  The USPTO also took an explicit position on this issue in 37 C.F.R. § 42.2.

In light of these factors, Board concluded that when Synopsys filed the petition, it was not in privity with EVE because (1) it had not yet acquired EVE, (2) Synopsys had not otherwise participated in the earlier 2006 lawsuit, and (3) Synopsys's petition did not inject delay into an ongoing lawsuit. A53-55. The Board concluded that there was no real-party-in-interest relationship because EVE did not control Synopsys and could not direct it (or prevent it) from filing the petition. A55-57. The Board's decision that there is no privity or real-party-in-interest relationship turns importantly on the lack of a formal, binding relationship between Synopsys and EVE on September 26, 2013, when the petition was filed. A56.

This conclusion is well in-line with the traditional understandings of estoppel on which section 315(b) is based. *See Taylor v. Sturgell*, 553 U.S. 880, 895 (2008) ("[A] nonparty is bound by a judgment if she assumed control over the litigation in which that judgment was rendered.") (internal quotations and alterations omitted); Wright & Miller § 4451. It was not error, as Mentor urges, for the Board to focus on the "control" aspect of the privity/real-party-in-interest inquiry. Simply put, prior to October 4, 2013, there were no binding legal ties that would have obligated Synopsys to EVE or vice-versa. Synopsys, at that point, remained free to challenge Mentor's patents.

### 4.    The Board correctly denied Mentor's motion for discovery on the privity issue.

Discovery in IPR proceedings is designed, by statute, to be limited. *See* 35 U.S.C. § 316(a)(5). In particular, other than guaranteeing depositions of witnesses who submit testimony, Congress delegated authority to the Director to establish procedures for additional discovery, provided that such discovery is "necessary in the interest of justice." *Id.* By limiting discovery in this manner, Congress sought to ensure that these Agency proceedings would be a low-cost, quick alternative to district court litigation for patentability issues. *See* 154 CONG. REC. S9988-89 (daily ed. Sept. 27, 2008) (statement of Senator Kyl) ("Given the time deadlines imposes on these proceedings, it is anticipated that, regardless of the standards imposed [on limiting discovery in the statute], PTO will be conservative in its grans of discovery."); 157 CONG. REC. S1375-76 (daily ed. March 8, 2011) (same) (noting that the current bill has the same provisions that were the subject of his comment in 2008). Pursuant to this statutory command, the USPTO has promulgated regulations providing for certain mandatory discovery, routine discovery, and then "additional discovery," which must meet this "in the interests of justice" standard. 37 C.F.R. § 42.51(b)(2).

Here, the Board did not abuse its discretion in denying Mentor's motion for additional discovery into the relationship between Synopsys and EVE because this "interest of justice" standard was not met. The Board denied Mentor's request, in

part, on the ground that it was overly-burdensome.  A378-85.  As the Board found,

Mentor proposed numerous, broad, open-ended document productions, multiple

interrogatories and requests for admission, and a 30(b)(6)-style deposition, all

reminiscent of district court litigation. A383-84.  While Mentor now complains

that the Board should have allowed some discovery, Mentor Br. at 63, it is not the

Board's job to craft tailored and targeted discovery requests.  Mentor was required

to articulate limited discovery demands and clearly articulate why that discovery

was needed, which the Board properly concluded it failed to do here.

The Board also denied discovery because Mentor has not shown that the

information sought was not otherwise accessible without discovery.  A383.

Indeed, given the amount of information to which Mentor already had access, it is

hard to see what additional discovery could have achieved in this case.  In

particular, Mentor had the complaint filed by Synopsys and EVE on September 27,

2013, which contained numerous pleadings by these parties on the status of their

relationship.  A1573-78.  The record also contains multiple press releases

announcing the acquisition by Synopsys of EVE on October 4, 2013.  A1590,

A1861.  Moreover, Synopsys had to attest to both any other real-parties-in-interest

it might have had and certify as to whether it was estopped by regulation, where

false declarations could subject the signing attorneys to sanction.  37 C.F.R.

28

§§ 42.8(b)(1) (real-party-in-interest notice), 42.11 (duty of candor), 42.12(a)

(sanctions); 42.104(a) (estoppel certification); *see also* 18 U.S.C. § 1001.

## D. The Board's Final Written Decision Need Address Only Claims That Remain Contested at the End of the Proceedings.

Synopsys argues that the Board erred by not addressing, in its final written

decision, all the claims Synopsys challenged in its petition.  Although Synopsys

purports to challenge the final written decision, its argument would require the

Board to institute an IPR on all claims presented in a petition.  Thus, Synopsys's

argument is a non-reviewable attack on the Board's institution decision.

In any event, the statutory framework makes clear that the final written

decision need not address claims for which no IPR proceeding was ever instituted.

The final written decision need only address claims for which the Board instituted

an IPR, and as discussed above, the Board's decision whether to institute a review

(acting on behalf of the Director), is "final and nonappealable."  35 U.S.C.

§ 314(d); *see St. Jude*, 749 F.3d at 1376; *Dominion Dealer*, 749 F.3d at 1381; *In re*

*Procter & Gamble Co.*, 749 F.3d 1376, 1377 (Fed. Cir. 2014) ("[A] non-institution

decision [in an inter partes review] may not be directly reviewed by this court

through the extraordinary means of mandamus.").

**1.  Assuming this Court reaches the issue, the board's decision to institute on only some claims comports with agency regulations and the IPR statutes.**

Assuming the Court addresses the Board's decision to institute on fewer than all claims, this decision is consistent with both statute and regulation.  Congress's intent, as shown from the statutes governing IPRs, is to give the Director complete discretion to deny institution of an IPR, as well as the authority to promulgate regulations governing when "sufficient grounds" for instituting petitions are present.  The Agency's regulations preserve the discretion afforded to the Agency by statute, and the Board acted within this statutory and regulatory framework when denying institution-in-part here.

**a.  Under chapter 31, the Director has complete discretion to deny institution.**

The statutory provisions most directly related to the institution decision demonstrate Congress's intent grant the Director complete discretion to <u>deny</u> institution.  *See* 35 U.S.C. §§ 314(a), 315(a)(1), 315(b).  The section most clearly directed to the decision to institute is aptly named "Institution of Inter Partes Review."  35 U.S.C. § 314.  This section specifies only a floor for the Director's decision to institute, providing that the Director "may not authorize an inter partes review to be instituted <u>unless</u> . . . there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."  35 U.S.C. § 314(a) (emphasis added).  Two other parts of chapter 31 that make

express reference to when a proceeding may be "instituted" are found in sections

315(a)(1) and 315(b).  These provisions are also framed in the negative, specifying

what related civil actions can bar an institution proceeding.  35 U.S.C. §§ 315(a)(1)

("An inter partes review may not be instituted if . . ."); 315(b) (same beginning).

These provisions are also consistent with other statutory provisions that govern

formal requirements of petitions, which likewise are framed in the negative and

only provide a floor above with the Director retains discretion to institute—or not.

35 U.S.C. § 312(a).  The negative wording of all of these provisions collectively

demonstrates that the Director is never required, by statute, to institute an IPR

proceeding, even if these statutory minimums are met.

    In contrast, the statutory provisions governing earlier types of post-grant

proceedings required the Director to conduct such proceedings if certain threshold

determinations were satisfied.  In ex parte reexaminations, the Director "will

determine" whether there is a substantial new question of patentability within three

months of a petition being filed.  35 U.S.C. § 303(a).  If the Director "finds that a

substantial new question of patentability affecting any claim of a patent is raised,

the determination will include an order for reexamination of the patent for

resolution of the question."  35 U.S.C. § 304 (emphasis added).  An ex parte

examination would then proceed.  *See* 35 U.S.C. §§ 304, 305.  In relevant part, the

same language governed the commencement of the now-superseded inter partes

reexaminations except that those statutory provisions used "shall" instead of "will." 35 U.S.C. §§ 312(a), 313 (May 2011). The lack of any of this mandatory language in the new IPR context is therefore telling—Congress intended for the Director to have the authority to deny institution.[6]

Indeed, IPR proceedings were meant to be a break from these past proceedings, to be more adjudicatory and faster than examination. H.R. Rep. No. 112-98, pt. 1, at 46 (2011). Legislative history indicates that this efficiency was tied, in part, to giving the Director a great deal of discretion in determining whether to deny institution, even for otherwise meritorious petitions. As Senator Kyl explained, this "reflects a legislative judgment that it is better that [USPTO] turn away some petitions that otherwise satisfy the threshold for instituting an inter partes or post-grant review than it is to allow the [USPTO] to develop a backlog of instituted reviews that precludes the [USPTO] from timely completing all proceedings." 157 Cong. Rec. S1377 (daily ed. Mar. 8, 2011).

---

[6] Synopsys further argues that the prior inter partes reexamination statute contained explicit language that allowed the Board's final written decision to be limited to just the issues that gave rise to a substantial new question of patentability. Synopsys Br. at 73, n.20. However, the language Synopsys relies upon appears in the statutory section requiring the Director to institute if a substantial new question is raised. 35 U.S.C. § 312(a) (May 2011). As explained, the corollary statute in IPRs does not require the Director to institute even if the substantive threshold is met. 35 U.S.C. § 314(a). The logical implication of this difference is that the Board's final written decision in IPRs is similarly not constrained.

### b. The Director has properly promulgated regulations that permit institution whenever the statutory criteria are met.

Beyond the minimums specified by statute, Congress delegated authority to the Director to prescribe when IPRs would be instituted. 35 U.S.C. §§ 316(a)(2), 316(a)(4). The Director has promulgated such regulations and because they represent the Agency's authorized exercise of rulemaking authority to fill a gap in the statute, they are entitled to deference. *Chevron*, 467 U.S. at 842-43.

Under 35 U.S.C. §§ 316(a)(2) and 316(a)(4), Congress conferred broad discretion on the Director to regulate when to begin IPR proceedings, allowing the Director to "set[] forth the standards for the showing of sufficient grounds to institute a review under section 314(a)," 35 U.S.C. § 316(a)(2), and to "establish[] and govern[] inter partes review under this chapter." 35 U.S.C. § 316(a)(4). Pursuant to this delegation, the Director used her rulemaking authority to add several additional formal requirements to the petition. *See, e.g.*, 37 C.F.R. §§ 42.104(a) (estoppel certification), 42.104(b)(3) (claim construction requirement). But with respect to the substantive standards, the Agency's regulations specify that the Board can institute on "all or some of the challenged claims," 37 C.F.R. § 42.108(a), provided that the statutory minimum substantive

threshold is met, i.e., that there is at least one claim that meets the "reasonable likelihood" standard.[7]  37 C.F.R. § 42.108(c).

Here, the Board instituted an IPR only for claims that met the reasonable likelihood threshold.  77 Fed. Reg. 48689 (describing this practice as one implementation under the promulgated rules);[8] *see also Auer*, 519 U.S. at 461.  The Board's institution decision in this case is clearly an allowed practice within the regulatory framework of instituting on "all or some" claims provided that at least one claim meets the statutory substantive minimum.

In its notice-and-comment rulemaking, the Agency explained how these rules satisfy the considerations that the Agency is required to consider by statute, which includes "the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter."  35 U.S.C. § 316(b).  77 Fed. Reg. 48702.  The Agency specifically considered the policy reasons Synopsys presents in its briefing for adopting an alternative approach of instituting on all claims when just one claim meets the threshold.  77 Fed. Reg.

---

[7] This section also allows the Board to "deny some or all grounds of unpatentability for some or all of the challenged claims," which is not directly challenged here.  37 C.F.R. § 42.108(b).

[8] This section reads, in relevant part, "[s]pecifically, in instituting review, the Board may authorize the review to proceed on the challenged claims for which the threshold requirements of the proceeding have been met.  The Board will identify the grounds upon which the review will proceed on a claim-by-claim basis.  Any claim or issue not included in the authorization is not part of the review."

48702-48703 (Comment 60).  In response, the Agency explained that its claim-by-claim approach would (1) "streamline and converge the issues for consideration," (2) "aid in the efficient operation of the Office and the ability of the Office to complete the review within the one-year timeframe," (3) and finally, be more fair to patent owners because it avoids burdening them  with "respond[ing] to non-meritorious grounds that fail to meet the initial thresholds."  *Id.* at 48703.  In addition, it helps to ensure that patent owners are not harassed by having an IPR be instituted on all the claims of a patent when only one broad claim in the patent would meet the reasonable likelihood threshold.  In other words, Synopsys's approach would allow all the claims of a patent to reviewed in an IPR trial even if the Board concluded that most of the claims did not meet the reasonable likelihood test, and moreover, even if the patent owner had never threatened to assert the broad claims against third parties.

The Agency's decision to adopt the rule in 37 C.F.R. § 42.108 is therefore a valid exercise of rulemaking authority entitled to *Chevron* deference.  Consistent with *Chevron* step one, there is a "gap" in the statute—when must the Agency institute a proceeding?  *Chevron,* 467 U.S. at 842-43.  Consistent with *Chevron* step two, the agency is authorized to issue rules to address this gap, which the Agency has done here through notice-and-comment rulemaking after thoroughly considering and responding to concerns about its proposals.  77 Fed. Reg. 48756.

Importantly here, the Director has been tasked with determining the proper balance between concerns of a party like Synopsys and *e.g.*, those of patent owners concerned about undue harassment. The regulations at issue in this case are the result of such balancing, and are well within the bounds of a reasonable interpretation of Congress's statutory framework.

> ### c.  Synopsys improperly tries to import limitations on the Director's authority to institute from a separate statutory provision.

Notwithstanding the statutory delegation of both discretion to deny institution and rulemaking authority to govern the institution process, Synopsys argues that the Director is constrained by the language of the statute governing the Board's final written decision. Synopsys bases its entire argument on the statutory provision related to the final written decision of the Board, 35 U.S.C. 318(a). This section states

> If an inter partes review is instituted and not dismissed under this chapter, the Patent Trial and Appeal Board shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added . . . .

35 U.S.C. § 318(a).

In the first instance, Synopsys's argument falters because it assumes that Congress intended to impose strict limitations on how the Director can institute a proceeding through a statutory provision that is, by its terms, not related to the institution decision at all. Section 318(a) governs the final written decision of the

Board.  In contrast, as explained above, every provision expressly related to institution never requires the Director to institute on any challenged claim, even if all the statutory minimums are satisfied.  That Congress would bury such a significant requirement in an unrelated provision when that requirement is such a departure from what the rest of the statutory provisions require is a poor interpretation of the statutory framework as a whole.  *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (internal quotations omitted).

Moreover, even crediting Synopsys's attempt to read a requirement into the institution decision from this provision governing the final written decision, the plain language of section 318(a), properly interpreted, does not require the final written decision to address all claims challenged in the petition.  Instead, the plain meaning of section 318(a) is that the Board's decision should address the patentability of any claims remaining in dispute once the IPR is instituted—any "challenged" claims and any new claims added by amendment.  This is what section 318(a) states:  "a final written decision with respect to the patentability of any patent <u>claim challenged by petitioner</u> and any <u>new claim added</u>" (emphasis added).  This interpretation makes sense because it accounts for developments (other than an institution decision) that could cause the claims being in dispute at

the end of a proceeding to be different than those in dispute at the beginning. For example, the patent owner can disclaim claims, or can cancel claims and enter amended claims. 37 C.F.R. §§ 42.107(e), 42.121. Synopsys's interpretation would have the Board ignore these developments and issue a final written decision on claims that have been dedicated to the public, a clear waste of administrative resources.

Synopsys's interpretation, moreover, essentially adds extra words to section 318(a), so that it would read "a final written decision with respect to the patentability of any patent <u>claim challenged by petitioner [in the petition]</u> and any new claim added" (emphasis added). The Supreme Court has instructed that "we ordinarily resist reading words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997). Synopsys justifies its interpretation by citing to other sections that use both the words "challenged" and "petition" to argue that when Congress uses the words "challenged" it means "in the petition." Synopsys Br. at 71-72. But of course, the problem with Synopsys's argument is that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quotations omitted). Here, as Synopsys admits, Congress used the words "challenged" and "petition" in other

sections where Congress intended "challenged" to be limited in this manner.   In section 318(a), Congress did not use the word "petition," giving rise to the inference that it did not intended to limit "challenged" in this way.

Thus, contrary to Synopsys's argument, section 318(a) does not indirectly impose a constraint on the Director's discretion to institute a proceeding, provided the statutory minimums are met, by requiring the Director to institute on all claims.

>       **d.      SAS's additional statutory arguments do not compel a different result.**

SAS's amicus brief in support of Synopsys's argument does not change the outcome.  SAS argues that narrowing the scope of the IPR burdens the district courts, but SAS's own citations undermine that argument.  SAS cites *Brixham Solutions, Ltd. v. Juniper Networks, Inc.*, No. 3-13-cv-00616, 2014 WL 1677991 (N.D. Cal. Apr. 28, 2014), SAS Br. at 6, but that decision recognizes that the district court action is streamlined even if no claims are cancelled in the IPR because estoppel under section 315(e) will apply to the grounds that "were addressed during the *inter partes* review."  SAS Br. at 6, quoting *Brixham,* 2014 WL 1677991, at *1.  *Brixham* thus supports the USPTO's approach, recognizing that even a partial review in which no claims are cancelled streamlines the district court cases; they do not "saddle[] the district court with larger and redundant workloads."  SAS Br. at 6.

**2.    Synopsys's attempt to circumvent the reviewability bar by purporting to challenge the final written decision is unavailing.**

Although Synopsys attempts to style its argument as an attack on the final written decision, it is ultimately an attack on the Director's decision to institute—which is non-reviewable by this Court.  Synopsys's argument that the final written decision must address all claims presented in the petition would require the Board to institute a proceeding for all claims presented in the petition.  Synopsys tries to argue to the contrary, suggesting for example, that the Board could simply repeat its decision not to institute on certain claims in the final written decision, Synopsys Br. at 73, thereby trying to decouple the institution decision from the final written decision.

But instead, it is clear from the IPR statues that Congress intended the final written decision to be commensurate with the claims for which an IPR proceeding is instituted.  In particular, the provisions governing future estoppel compel this interpretation.  35 U.S.C. § 315(e).  This is because the estoppel provisions of 35 U.S.C. § 315(e) prevent petitioners from future challenges to any claims on which the Board has issued a final written decision, as to "any ground that the petitioner raised or reasonably could have raised."  *Id.*  Synopsys's argument would have the anomalous result of having a petitioner (such as Synopsys) estopped from future challenges in district courts or the USPTO against claims for which the Board had denied institution of IPR proceedings, but which the petitioner had presented for

review.  In other words, petitioners would be estopped without ever having the benefit of an IPR proceeding as to non-instituted claims.  There is nothing in the statutory scheme to suggest that petitioners should be effectively penalized for simply presenting claims for review, when they are not even granted a full administrative proceeding on them.

Accordingly, Synopsys's argument directed at the final written decision is truly an indirect attack on the institution decision because the only claims that must be addressed in the final written decision are those claims for which a proceeding has been insituted.  Synopsys is precluded from obtaining such review by statute. 35 U.S.C. § 314(d); *Cuozzo*, 2015 WL 448667, at *3.  This Court should decline to entertain this attempt to circumvent Congress's jurisdictional limits on this Court's review.

**E.   The Board Correctly Denied Mentor's Motion to Amend.**

Mentor argues that the Board erred in placing the burden of proof on the patent owner (i.e., Mentor) to show that its proposed amended claims would be patentable over the prior art.  Mentor Br. at 63-69.  But the Board's decision to make Mentor, as the movant, bear the burden of proof for an amendment is a proper interpretation of the Agency's regulations governing IPRs, which in turn are a reasonable interpretation of the framework that Congress set forth for IPRs and the amendment process.  A83, A88-89; *City of Arlington*, 133 S. Ct. at 1868; *Auer*,

519 U.S. at 461.  The Board was further correct to conclude that bearing the burden of proof meant that Mentor had to show that the newly-proposed claims would be patentable over the prior art in general.  *See Auer*, 519 U.S. at 461; *In re Lovin*, 652 F.3d 1349, 1356 (Fed. Cir. 2011).  The Board's process sensibly accounts for the need to make sure new claims are patentable under all of sections 102, 103, and 112 within the strict timeframes mandated by statute and the adjudicatory framework of IPRs.

### 1.    The USPTO properly promulgated rules governing motions to amend pursuant to a statutory delegation of authority.

The statutes governing IPRs provide only a minimal framework governing the amendment process.  The only section of chapter 31 that directly addresses the amendment process (other than to delegate authority to the Director) is in section 316(d).  This section does not specify exactly how the amendment process must work in an IPR trial, but only certain requirements that any amendment process must have, including (1) a guarantee that the patent owner receive one right to a "motion" to amend; (2) that this right includes a right to propose a "reasonable" number of substitute claims; (3) that amendments cannot enlarge claim scope; and (4) procedural requirements for additional motions to amend.  35 U.S.C. § 316(d). Within these statutory contours, the Director is expressly authorized to "set[] forth the standards and procedures for allowing the patent owner to move to amend the patent under subsection (d) . . . ."  35 U.S.C. § 316(a)(9).

After publishing proposed rules and receiving public comment, the USPTO promulgated final rules setting forth comprehensive procedures common to all of the new post-grant trial procedures (IPRs, post-grant reviews, and covered business method reviews).  37 C.F.R., part 42, subpart A ("Trial Practice and Procedure.").  This subpart specifies that any relief sought by a party, other than in the original petition, must be through a motion.  37 C.F.R. 42.20.  This section further provides that the burden of proof for any motion shall be on the movant:

> (c) Burden of proof.  The moving party has the burden of proof to establish that it is entitled to the relief requested.

37 C.F.R. § 42.20(c).  Subpart B of part 42 addresses procedures specific to IPRs and contains an additional rule directed specifically to amendments.  37 C.F.R. § 42.121.  In relevant part, this section specifies that amendments shall be sought by "motion."  *E.g.*, 37 C.F.R. § 42.121(a) (titled "<u>motion</u> to amend") (emphasis added); 37 C.F.R. § 42.121(b) (describing the content of such motions), which is consistent with statutory text characterizing the amendment practice as a motion. 35 U.S.C. §§ 316(a)(9); 316(d).

These regulations deserve *Chevron* deference—they were promulgated following notice-and-comment rulemaking, pursuant to a statutory delegation of authority, and fit well-within the general framework provided by 35 U.S.C. § 316(d).  *Chevron,* 467 U.S. at 842-43; *City of Arlington*, 133 S. Ct. at 1868; *Cuozzo*, 2015 WL 448667, at *3.

**2.    The Board's decision to have the moving party bear the burden of proof is a proper interpretation of its rules.**

Mentor challenges the Board's reliance on 37 C.F.R. § 42.20, governing who bears the burden of proof in motions, to conclude that Mentor, as the movant, bears the burden of proof in a motion to amend.  Mentor Br. at 63-65.

But the Board's interpretation and application of its own rules is entitled to substantial deference.  *Auer*, 519 U.S. at 461; *Lovin*, 652 F.3d at 1356.  In this case, the Board's interpretation is a straightforward application of a rule that is generally applicable to all motions (section 42.20) to a particular motion (a motion to amend under section 42.121).  As part of bearing the burden of proof, the Board required Mentor to show that its proposed amended claims were "general patentability" over the prior art.  A88.

Contrary to Mentor's argument that there are no reasonable guideposts for what sort of showing is required, Mentor Br. at 67, the Board has set forth a detailed explanation of what sort of showing would be needed in an early IPR amendment decision designated as "informational."  *Idle Free Sys., Inc. v. Bergstrom, Inc.*, IPR2012-00027, Paper 26, pages 6-10 (June 11, 2013)[9]; A395 (Board directing Mentor's attention to this decision); Mentor Br. at 68 (acknowledging this decision).  The Board explained that "[a] patent owner should

---

[9] Mentor filed its original motion to amend on June 21, 2013, and its substitute motion to amend on July 2, 2013.  A484, A513.

identify specifically the feature or features added to each substitute claim . . . and come forward with technical facts and reasoning about those feature(s) . . . sufficient to persuade the Board that the proposed substitute claim is patentable" over both the prior art of record and prior art known to the patent owner. *Idle Free*, page 7. The Board specifically cautioned that conclusory remarks about the closest prior art would not be sufficient. *Id.* at 7-8.

While patent owners have the guidance from this "informative" decision, the decision at bottom does no more than restate familiar principles of obviousness case law. *See Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*, 73 F.3d 1085, 1088 (Fed. Cir. 1995) (framing the obviousness inquiry as "would one of ordinary skill in the art who set out to solve the problem of increasing ammunition capacity, and who had before him in his workshop the prior art, have been reasonably expected to use the solution that is claimed in the '618 patent[?]"). What is needed is a general explanation of what came beforehand (relevant to the newly added claim element), and how what the patent owner seeks to claim now is different, i.e., nonobvious. It is an explanation that any inventor should be able to provide.

There are sound policy reasons underlying the Board's approach to its rules. Foremost is that once the Board has issued a certification under 35 U.S.C. § 318(b) allowing newly amended claims, these amended claims become part of an issued

45

patent without having gone through an examination procedure that includes an examiner's search of prior art. The Office has a responsibility to ensure that issued claims comply with all the statutory provisions that would normally be considered during an examination. *See* 35 U.S.C. § 316(a)(9). The Board's approach to resolving this in an adjudicatory context with its strict statutory timeframes for completion is to place the burden of proof on the movant.

Moreover, while a petitioner has a right to respond to a proposed amendment, the petitioner cannot be expected to substitute for an examiner in an examination setting. In certain cases, for example, the patent owner's proposed amendment might provide a clear non-infringement position for the petitioner. There, the petitioner would not necessarily be motivated to oppose the amendment vigorously. The Board's approach, therefore, rests on the correct conclusion that the presence of a petitioner is not a substitute for the lack of an examiner. Finally, other avenues will generally remain for patent owners to seek claim amendments through a traditional examination process, such as ex parte examination or reissue proceedings. *See Idle Free*, page 6.

3. **Placing the burden of proof on the patent owner does not violate the separate burden of proof requirement set forth in 35 U.S.C. § 316(e).**

Mentor argues that the Board's reliance on section 42.20 in the amendment context is improper because it violates 35 U.S.C. 316(e).  Mentor Br. at 63-65.  This section reads:

> (e) Evidentiary standards.  In an inter partes review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence.

But this section, properly interpreted, does not speak to the standards that are meant to be employed in the amendment process.  Rather, this section speaks to claims that are part of an issued patent that have been challenged in an IPR proceeding.  Mentor's motion to amend, in contrast, includes proposed claims that are not part of its patent nor part of the petitioner's validity challenge.  Accordingly, Mentor's motion to amend falls under the more specific statutory subsections directed to amendments provided by Congress.  *See Nat'l Cable and Telecomm. Ass'n v. Gulf Power Co.*, 534 U.S. 327, 335 (2002) ("[S]pecific statutory language should control more general language when there is a conflict between the two.").  As explained above, those specific statutory provisions gave the PTO the authority to set the "standards and procedures for allowing the patent owner to move to amend the patent."  35 U.S.C. § 316(a)(9).  And, those standards, applied by the Board, are set forth in rules 42.20 and 42.121.

That section 316(e) should not be read as Mentor urges can further been seen from considering the language used in the delegation of authority to the Director, 35 U.S.C. § 316(a)(9). This section explicitly gives the Director the authority to "set[] forth the <u>standards</u> and procedures for allowing the patent owner to move to amend the patent under subsection (d) . . . ." (emphasis added). There would have been no need to delegate authority to address the "standards" for amendments if the "standards" set forth in section 316(e) were already meant to apply. *See* 35 U.S.C. § 316(e) (titled "Evidentiary <u>Standards</u>") (emphasis added).

In addition, the statutory provisions governing IPRs make a consistent distinction through between claims "challenged by petitioners" and those added by amendment. For example, pursuant to section 318(a), the Board is required to address claims "challenged by the petitioner" and "any new claim added under section 316(d)" in the final written decision. 35 U.S.C. § 318(a). The wording of this section explicitly suggests that the petitioner is not considered to be challenging claims newly added by amendment. *See Sullivan*, 362 F.3d at 1327. This distinction is reinforced by the estoppel provisions of section 315(e), which by their terms only estop petitioners from future attacks on already-patented claims they have challenged in the IPR, but not claims that may have been newly added by amendment. This is because section 315(e) bases estoppel on "a claim <u>in a patent</u> . . . that results in a final written decision." 35 U.S.C. §§ 315(e)(1)

(emphasis added), 315(e)(2) (same wording in relevant part).  A proposed amendment is not a claim "in a patent" until the Board has issued its final written decision that makes this proposed amendment a claim and an official part of the patent.  *See* 35 U.S.C. § 318(b) (the Director will publish a certificate "incorporating in the patent by operation of the certificate any new or amended claim determined to be patentable.").

The import of these statutory provisions is that petitioners are responsible for mounting their best challenge against already-existing claims of a patent—and indeed, they will be estopped from future challenges on any grounds they could have raised—but that amendments are for the benefit of the patent owner, and are not necessarily automatically swept up into the adjudicatory contest between patent owner and petitioner.  Thus, the regulations, and the Board's interpretation of those regulations here, does not violate section 315(e) because section 315(e) does not apply to the amendment context.

### 4.    The Board's procedural decisions to deny Mentor extra pages for its briefing are entitled to deference.

Mentor also argues that the Board imposed "unreasonable procedural constraints" when it required Mentor to submit its initial amendment motion in accordance with the Board rules and declined to allow extra pages for Mentor's reply brief.  Mentor Br. at 67-69.

The rules specify a fifteen-page limit for motions.  37 C.F.R. § 42.24(a)(1)(v).  Such a rule is well within the Agency's delegated authority to promulgate regulations to governing IPR proceedings and should be accorded *Chevron* deference.  35 U.S.C. § 316(a)(4); ).  *Chevron*, 467 U.S. at 842-43; *City of Arlington*, 133 S. Ct. at 1868.  In any event, Mentor does not appear to attack them facially, but instead contends that their application in this case was an abuse of discretion.  *See* Mentor Br. at 67-69.

But the Board did not abuse its discretion here.  First, although Mentor now complains about having to put its proposed claims in the body of its motion rather than the appendix, it does not appear that Mentor ever sought leave from the Board to do so.  Instead, it submitted its original motion with a claims appendix, in violation of the Board rules.  A465-90.  This motion was rejected, and Mentor was given leave to refile it in accordance with the rules.  A491-93.  In contrast, in the cases to which Mentor cites, it appears that the Board was asked whether the patent owner could put the proposed claims in an appendix, or otherwise provided specific authorization.  IPR2012-00006, paper 31 (request); IPR2013-00012, paper 48 (request); IPR2014-0041, paper 19 (order granting additional pages); Mentor Br. at 68, n.18   In contrast here, the Board's record of the conference call where it provided additional guidance on Mentor's motion to amend contains no indication that page limitations were discussed.  A395-96.  The Board did not abuse its

discretion here, where there is no indication that the Board was ever asked to waive its rules.

The Board also did not abuse its discretion in denying Mentor's request to have extra pages on its reply brief.  A588-90.  Although Mentor had at least twenty days to file its reply, the request to the Board was made on noon the day before the brief was due.  A528, A547, A589.  If the Board were to set a precedent of allowing last-minute motions like this, it would prompt a flurry of hastily-scheduled conference calls that would ultimately make the Board's ability to manage all its trials difficult.  Thus, there was no abuse of discretion in denying this request.

## VI.    CONCLUSION

For the foregoing reasons, this Court should affirm the Board's final written decision concluding that claims 5, 8, and 9 are unpatentable as anticipated, that claims 1-4, 6, 7, 11, 28, and 29 were not shown to be unpatentable, and denying Mentor's contingent motion to amend claims 5, 8, and 9.

Respectfully submitted,

February 25, 2015

/s/ Jamie L. Simpson
NATHAN K. KELLEY
Solicitor

JAMIE L. SIMPSON
SCOTT C. WEIDENFELLER
Associate Solicitors

*Office of the Solicitor* – Mail Stop 8
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

*Attorneys for the Director of the*
*United States Patent and*
*Trademark Office*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of February, 2015, I electronically filed the foregoing BRIEF FOR INTERVENOR – DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE using the Court's CM/ECF filing system.  Counsel for the Appellant was electronically served via e-mail per Fed. R. App. P. 25 and Fed. Cir. R. 25(a) and 25(b).

/s/ Jamie L. Simpson
Associate Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

The brief contains 12,104 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This brief has been prepared in a proportionally-spaced typeface using Microsoft® Office Word 2010 in fourteen-point Times New Roman font.

/s/ Jamie L. Simpson
Associate Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035